IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-00085-FL

| | | |
|---|---|---|
| DONALD L. RAGAVAGE, | ) | |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CITY OF WILMINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. (DE 34). Plaintiff has responded in opposition, and defendant has replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this action on March 19, 2015, against defendant in the Superior Court of New Hanover County. Plaintiff asserts claims against defendant under 42 U.S.C. § 1983, on the basis that defendant violated his rights secured by the First Amendment to the United States Constitution; and under North Carolina common law, on the basis that defendant violated his rights secured by Article I of the North Carolina Constitution. Specifically, plaintiff alleges that defendant unlawfully terminated his employment with the Wilmington Fire Department ("WFD") in retaliation for exercising his federal and state rights to free speech and free association. Plaintiff seeks

compensatory damages, injunctive and declaratory relief, attorneys' fees, trial by jury, and any other legal and equitable relief the court may deem as just and proper.

As part of the complaint filed in state court, plaintiff included a petition for judicial review of an administrative decision, pursuant to North Carolina's Administrative Procedure Act, N.C. Gen. Stat. §§ 150B-43 through 150B-45 ("APA appeal"). The APA appeal sought review of a final decision by the City of Wilmington Civil Service Commission ("Commission"), which sustained plaintiff's termination from the WFD in an administrative proceeding conducted in accordance with the Wilmington City Charter.

On April 29, 2015, defendant timely filed a notice of removal in this court, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendant invoked this court's federal question jurisdiction over plaintiff's § 1983 claim, under 28 U.S.C. § 1331. As to the remainder of plaintiff's claims, including plaintiff's state constitutional claims and APA appeal, defendant invoked the court's supplemental jurisdiction, under 28 U.S.C. § 1367. Discovery commenced on July 15, 2015, pursuant to this court's case management order, and concluded on March 23, 2016.

On March 28, 2016, this court entered an order remanding only that portion of the case constituting plaintiff's APA appeal to the Superior Court of New Hanover County for lack of jurisdiction. Plaintiff's federal and state constitutional claims remained within the jurisdiction of the court. Thereafter, the court stayed further proceedings on the federal and state constitutional claims, pending the Superior Court's resolution of plaintiff's APA appeal. On July 8, 2016, the Superior Court of New Hanover County entered an order denying plaintiff's APA appeal.

On August 8, 2016, defendant filed the instant motion for summary judgment as to plaintiff's remaining claims, pursuant to Rule 56, accompanied by a statement of material facts, appendix

2

thereto, and a memorandum of law. In support of summary judgment, defendant relies on the following materials: (1) the affidavit of Eugenia L. Sexton ("Sexton"), Director of Human Resources for the City of Wilmington; (2) the affidavit of Thomas Robinson, Jr. ("Robinson"), Battalion Chief of the WFD; (3) the affidavit of Jon Steven Mason ("Mason"), Assistant Chief of the WFD; (4) the affidavit of Cecil V. Martinette ("Martinette"), Fire Chief of the WFD; and (5) the deposition of plaintiff. In opposition to the instant motion, plaintiff filed a statement of material facts and a memorandum of law, relying on the deposition of Martinette, as well as his own deposition.

## STATEMENT OF FACTS

The facts viewed in the light most favorable to the plaintiff may be summarized as follows. On September 10, 1990, defendant hired plaintiff as a firefighter with the WFD. (DE 42). Plaintiff was promoted to the position of Captain on December 8, 2008, and served as Captain until terminated from the WFD on September 9, 2014. (Id.).

While employed with the WFD, plaintiff was an active member and leader of the Wilmington Professional Fire Fighters Association, Local 129 of the International Association of Fire Fighters ("WPFFA"). (Id.). In 2010, plaintiff was elected president of the WPFFA. (Id.). Plaintiff served as president of the WPFFA from 2010-2012 and again from 2014-2015. (DE 42-1). As president of the WPFFA, plaintiff raised issues and grievances on behalf of WPFFA members. (DE 38). Plaintiff also spoke publicly about his concerns with the City's plan to close four fire stations and open two "super" stations and participated in various efforts to inform others of the potential negative impact such closings could have on the provision of adequate and effective first responder services in Wilmington. (DE 42-2).

To ensure that the WPFFA's concerns were effectively communicated to the WFD, Martinette routinely met with the WPFFA president and executive board. (DE 39). After plaintiff's reelection in 2014, however, Martinette refused to meet with plaintiff in his representative capacity due to concerns that plaintiff was unable to "accurately communicate the substance of . . . conversations to either the executive board or the rest of the union membership." (Id.). Martinette continued to meet with other members of WPFFA's executive board. (Id.).

During his employment, plaintiff routinely questioned and criticized WFD policies and decisions. (DE 42). While the WFD permits its employees to raise concerns and critique the department, it expects employees to do so with the utmost respect and professionalism. (DE 39). On many occasions, Martinette believed that plaintiff shared critiques in a manner that was "openly disrespectful to [d]epartment leadership and individual employees." (Id.). In 2013, Martinette transferred plaintiff from Station 5 to Station 15, as a result of plaintiff's behavior. (Id.). Traditionally, Station 15 is slower than Station 5. (Id.).

Following plaintiff's transfer, Martinette and Mason met with plaintiff on August 27, 2013, and directed him to change his behavior. (DE 42). In January 2014, Mason again directed plaintiff to change his behavior, particularly with regard to his use of City e-mail, after plaintiff sent what Mason considered to be a disrespectful and unprofessional email over the WFD server. (Id.).

On June 26, 2014, Mason issued two written disciplinary reminders to plaintiff as a result of an e-mail plaintiff sent to members of the WFD on June 18, 2014. (Id.). The First Written Reminder was for improper use of City e-mail. (Id.). The Second Written Reminder was for violation of Mason's January 2014 direct verbal order. (Id.). Plaintiff timely appealed the

4

disciplinary action to Martinette, who in a letter dated July 31, 2014, upheld both written reminders. (Id.).

On August 13, 2014, Martinette, Mason, and Robinson held a disciplinary conference with plaintiff regarding his conduct during a meeting held by Sexton on June 20, 2014. (Id.). In a letter dated the same day, Martinette suspended plaintiff for 14 days without pay, citing plaintiff's "unprofessional" conduct during the Sexton meeting as a basis for the suspension. (DE 22-1).[1] On August 22, 2014, plaintiff appealed his suspension to City Manager, Sterling Cheatham ("Cheatham"). (Id.). On September 29, 2014, Cheatham issued a letter upholding plaintiff's suspension.

On September 5, 2014, Martinette, Mason, Robinson and Battalion Chief David Hines, held a disciplinary conference with plaintiff regarding two incidents, one on July 8, 2014, and another on August 1, 2014, during which plaintiff temporarily took his fire truck apparatus out of service without approval from his Battalion Chief. (Id.). On September 9, 2014, Martinette sent plaintiff a letter, concluding that plaintiff's conduct on July 8 and August 1, 2014, violated City and WFD policies and endangered City residents by increasing emergency response time. (DE 39; DE 22-1). In the letter, Martinette informed plaintiff that in light of plaintiff's disciplinary record and conduct on July 8 and August 1, 2014, he was terminating plaintiff's employment with the WFD. (DE 22-1).

On September 16, 2014, plaintiff appealed his termination to the Commission. (Id.) The Commission heard testimony and received evidence in plaintiff's case on November 19, 2014, and January 29, 2015. (DE 33-1). At the hearing, plaintiff argued that his termination violated his First

---

[1] In his deposition, Martinette reveals that sometime after he suspended plaintiff without pay, "it was determined," that he lacked the requisite "authority to do so." (DE 42-2). As a result, Martinette's decision "was corrected" and plaintiff "was ultimately placed on paid leave." (Id.).

5

Amendment and North Carolina state constitutional rights. (DE 22-6). On February 19, 2015, the Commission entered an order sustaining Martinette's termination decision. (<u>Id.</u>). On March 19, 2015, plaintiff commenced the instant action, including the APA appeal, in the Superior Court of New Hanover County, as detailed above in the statement of the case.

## DISCUSSION

A.  Standard of Review

1. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u>

6

at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

1. Municipal Liability Under § 1983

Defendant argues, among other things, that summary judgment is warranted because plaintiff was not terminated by an officer or entity who had authority to establish final policy respecting employee terminations, and therefore, it cannot be liable under § 1983.

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

7

Case 7:15-cv-00085-FL   Document 45   Filed 11/03/16   Page 7 of 14

> the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

It is well-established that municipalities and local governments are "included among those 'persons' to whom § 1983 applies." Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66 (4th Cir. 2015) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992)). However, a "municipality cannot be held liable under § 1983 on a [theory of] respondeat superior." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). Rather, "a municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury . . . .'" Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 470 (4th Cir. 2013) (quoting Monell, 436 U.S. at 694).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712–13 (4th Cir. 1999) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244–45 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987)). Municipal policy also includes "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

A government policy or custom need not have received formal approval through the municipality's official decision making channels to subject the municipality to liability. Under

8

appropriate circumstances, "municipal liability may be imposed for a single decision by [a] municipal policy maker[]." Pembaur, 475 U.S. at 480. To hold a municipality liable for a single decision, however, the decision maker must possess "final authority to establish municipal policy with respect to the action ordered." Id. at 481. "The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability of that discretion." Id. at 481–82 (internal citations omitted). Rather, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." Id. at 482. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority . . . ." Id. Whether an official has the requisite authority is a question of state law. See id. at 483.

Here, plaintiff was not terminated by a governing body, or individual, with final policymaking authority respecting personnel decisions, including employee terminations. In North Carolina, the City Council is vested with authority to establish personnel policy. N.C. Gen. Stat. § 160A-164 ("The [City] [C]ouncil may adopt or provide for rules and regulations or ordinances concerning but not limited to . . . personnel policies[] and any other measures that would promote the hiring and retention of capable, diligent, and honest career employees."). The Wilmington City Charter delegates to the City Manager the authority to "suspend and remove all city employees and heads of departments." H.B. 741, 1977 Sess. L. § 9.1(a) (N.C. 1977) (the "City Charter"). However, the ultimate authority to establish final policy respecting employee suspension and termination remains with the City Council. See id.; see also N.C. Gen. Stat. § 160A-164.

The City Charter also establishes the Commission. H.B. 741, 1977 Sess. L. § 11.1 (N.C. 1977). The Commission is vested with authority to conduct public hearings regarding dismissals

9

and demotions of employees of the Police and Fire Departments of the City of Wilmington. Id. at § 11.6(c). If the Commission determines that an employee violated a department rule or regulation, the Commission has the authority to "sustain the action of the chief or take any other action that may be deemed appropriate." Id. An employee may appeal a decision by the Commission to a court of competent jurisdiction, in accordance with N.C. Gen. Stat. § 150A et seq. Id. Under the terms of the City Charter, the Commission does not have the authority to create policy respecting employee terminations and suspensions. See id. at § 11.8

The parties agree, and the record reflects, that Martinette made the decision to terminate plaintiff and that the Commission upheld this decision. (See DE 42). The parties also agree that Martinette made the decision to suspend plaintiff and that Cheatham upheld that suspension. (Id.). However, since neither Martinette, Cheatham, nor the Commission have authority to establish final policy respecting employee terminations and suspensions, any liability predicated on a decision made with respect to plaintiff's allegedly unlawful suspension and/or termination cannot be attributed to defendant.

Plaintiff argues that "the City Council completely abdicated its responsibility for creating policy relating to [u]nion activities and/or speech on matters of public concern and has, therefore, impliedly delegated its authority [to create policy] to the City Manager and the department directors he employs."[2] (DE 43). This argument, however, is unpersuasive. As an initial matter, the fact that the City Charter may delegate to the City Manager, or in turn to the Fire Chief, the authority to

---

[2] Plaintiff's counsel raised a nearly identical argument in a factually similar case before another court in this district. In that case, the court rejected the plaintiff's argument and granted the defendant's motion for summary judgment. See Minnick v. Cty. of Currituck, 861 F. Supp.2d 677, 681 (E.D.N.C. 2012) ("[I]t would be inappropriate for this Court to look behind state law assigning final policymaking authority to the Board of Commissioners in order to conduct a fact-finding on whether County Manager Scanlon or Chief Carter 'effectively' made final policy on personnel decisions when that policymaking authority is not conferred by state law.").

terminate an employee is distinct from the determination of whether Martinette or Cheatham had final policymaking authority with respect to such termination under state law. See Pembaur, 475 U.S. at 481–82. Also distinct from the determination of whether Martinette or Cheatham had final policymaking authority are the facts that Cheatham upheld plaintiff's suspension and that the Commission upheld plaintiff's termination. See id.

Plaintiff's argument that the City Council "impliedly delegated" policy-creating responsibility to Martinette or Cheatham misses the mark. In identifying those individuals or governmental bodies who speak with final policymaking authority, courts look only to "state and local positive law, as well as custom or usage having the force of law." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (internal quotations omitted). Courts do not consider a municipality's "actual power structures" in making this determination. See City of St. Louis v. Praprotnik, 486 U.S. 108, 124 n.1 (1988) ("[W]e [do] not replace th[e] standard [for identifying individuals with final policymaking authority] with a new approach in which state law becomes merely an 'appropriate starting point' for an 'assessment of a municipality's actual power structure.'"). Since North Carolina law vests final personnel policymaking authority only with the City Council, and the City Council did not make a policy decision with respect to plaintiff's termination in this case, plaintiff's § 1983 claim must fail. Accepting plaintiff's argument necessarily requires this court to look behind state law and assess the City's actual power structures, a task this court is unwilling to undertake in light of Supreme Court precedent.

For further support of its position that § 1983 liability against defendant is warranted, plaintiff cites Pembaur. In Pembaur, the Supreme Court found that a county could be held liable under § 1983 for acts carried out by a deputy sheriff while the sheriff acted pursuant to the express

11

instruction of the county prosecutor. Pembaur, 475 U.S. at 484–85. In reaching its conclusion, the Court reasoned that because the county prosecutor had statutory authority to establish county policy, the county prosecutor acted as a final decision maker when instructing the sheriff to take certain action. Id. at 485. Here, however, unlike Pembaur, there is no identifiable statutory provision which vests in the Fire Chief or the City Manager the authority to establish city policy regarding personnel decisions, including terminations. Additionally, the City Council did not instruct the Fire Chief or the City Manager to take any action with respect to plaintiff's termination. Accordingly, defendant cannot be held liable under § 1983 for the acts of Martinette or Cheatham.

In sum, plaintiff has not demonstrated that defendant's "policy or custom" inflicted plaintiff's alleged injury in this case. Santos, 725 F.3d at 470.[3] Where plaintiff is lacking an essential element of a § 1983 claim, the court need not consider whether plaintiff has forecasted sufficient evidence of a constitutional violation under the First Amendment arising from his termination. Accordingly, defendant is entitled to summary judgment on plaintiff's § 1983 claim.

2. North Carolina State Constitutional Claims

Defendant contends that it is also entitled to summary judgment on plaintiff's state constitutional claims. Specifically, defendant argues that plaintiff has an adequate remedy at state law, which bars him from bringing a direct claim under the North Carolina Constitution.

"[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim" under the North Carolina Constitution. Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 782 (1992). "To assert a direct constitutional

---

[3] Furthermore, plaintiff does not challenge any official City policy or custom or assert that the City Council was "aware of the [alleged] constitutional violation and either participated in, or otherwise condoned it." Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

12

claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury" alleged. Copper ex rel. Copper v. Denlinger, 363 N.C. 784, 788 (2010). A remedy is adequate if it "provide[s] [a] possibility of relief under the circumstances" and gives the plaintiff an "opportunity to enter the courthouse doors and present his claim." Craig ex rel. Craig v. New Hanover Cty Bd. of Educ., 363 N.C. 334, 340 (2009).

Here, plaintiff has an adequate remedy at law. Under N.C. Gen. Stat. § 150B-43 through § 150B-45, plaintiff has the ability to seek judicial review of the administrative decision upholding his termination. See Copper, 363 N.C. at 788–89 (finding an adequate remedy to exist where a statute provided the plaintiff the right to seek judicial review); see also Swain v. Elfland, 145 N.C. App. 383, 390 (2001) (finding a state statute providing the plaintiff the right to seek administrative and judicial review to be an adequate remedy for the plaintiff's free speech claim). Although not alleged, plaintiff also had the ability to assert a wrongful discharge claim against defendant. See Phillips v. Gray, 163 N.C. App. 52, 57–58 (2004) (finding a common law wrongful discharge claim to be an adequate remedy that barred plaintiff's free speech claim under the North Carolina Constitution); see also Iglesias v. Wolford, 539 F. Supp. 2d 831, 839 (E.D.N.C. 2008) (finding that a claim for wrongful discharge barred the plaintiff from bringing a free speech claim under the North Carolina Constitution). Consequently, defendant is also entitled to summary judgment on plaintiff's state constitutional claims.

Plaintiff argues that although he raised his state constitutional concerns before the Commission, because neither the Commission nor the state court considered his argument, N.C. Gen. Stat. § 150B-43 is an inadequate remedy. However, as the record reflects, plaintiff did have an opportunity to present his constitutional claims. Thus, plaintiff does have an adequate remedy

13

Case 7:15-cv-00085-FL   Document 45   Filed 11/03/16   Page 13 of 14

at law. Even if an adequate remedy did not exist, the court declines to exercise supplemental jurisdiction over plaintiff's North Carolina state constitutional claims, in light of the disposition of plaintiff's § 1983 claims. See 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment. (DE 34). The clerk is DIRECTED to close this case.

SO ORDERED, this the 3rd day of November, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge